# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RUSSELL WITT**, | Case No. 6:14-cv-01338-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | |
| Defendant. | |

Kathryn Tassinari and Brent Wells, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette, Suite 200, Eugene OR 97401. Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEYS OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Russell Witt ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II

and XIV of the Social Security Act. For the reasons discussed below, the Commissioner's

decision is reversed and remanded for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on September 28, 1955. AR 180. He dropped out of school in the 8th

grade and later earned his GED. AR 58, 314. He has past work experience as a sweeper operator,

a maintenance worker, a woodworker, and a plumbing apprentice. AR 61. Plaintiff protectively

filed applications for SSI and DIB on March 18, 2013, alleging disability as of September 28,

2010 due to Alzheimer's or dementia, major depressive disorder, osteoarthritis, diabetes mellitus,

hepatitis C, and neuropathy. AR 180-94. Plaintiff later amended his alleged onset date to

September 30, 2012. AR 42. Thus, Plaintiff was 57 years old as of his alleged onset date and is

currently 60 years old.

Plaintiff's applications were denied initially and upon reconsideration, and he requested a

hearing before an ALJ. AR 128-43, 146-47. An administrative hearing was held before ALJ John

Michaelson on April 18, 2014. AR 37-67. On April 30, 2014, ALJ Michaelson issued a written

decision denying Plaintiff's applications. AR 18-36. The Appeals Council denied Plaintiff's

subsequent request for review on June 27, 2014, making the ALJ's decision final. AR 1-13. This

appeal followed.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

PAGE 4 – OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

After finding that Plaintiff met the insured status requirements of the Social Security Act, the ALJ performed the sequential analysis. AR 23. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after September 28, 2010, the original alleged disability onset date.[1] *Id.* At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis, depression, and a history of learning disorder. AR 24. At step three, the ALJ found that none of Plaintiff's severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next assessed Plaintiff's RFC, and determined that Plaintiff can perform a range of medium work with limitations that he can frequently handle, grasp, finger, and feel with his right hand; and he can perform only simple, repetitive, routine tasks requiring no more than

---

[1] The ALJ's opinion does not reference the amended alleged onset date.

occasional interaction with the general public. AR 26. Proceeding to step four, the ALJ

concluded that Plaintiff could perform his past work as a maintenance worker. AR 29. The ALJ

therefore concluded that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly rejecting Plaintiff's credibility;

(B) failing to incorporate standing and walking limitations into the RFC; (C) failing to order a

consultative examination; (D) improperly evaluating the medical opinion evidence; and (E)

failing to find Plaintiff's Alzheimer's or dementia to be "severe" at step two. Plaintiff also argues

that the ALJ's opinion is not supported by substantial evidence in the record when new evidence

submitted to the Appeals Council after the ALJ's decision is considered. For the reasons

discussed below, the ALJ's decision is reversed and remanded for further proceedings consistent

with this opinion.

### A. Plaintiff's Credibility

Plaintiff first argues that the ALJ improperly rejected his credibility. There is a two-step

process for evaluating the credibility of a claimant's own testimony about the severity and

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)

(citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the

claimant "need not show that her impairment could reasonably be expected to cause the severity

of the symptom she has alleged; she need only show that it could reasonably have caused some

degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

Further, the Ninth Circuit has said that an ALJ "may consider ... ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the administrative hearing, Plaintiff testified that he is unable to work due to pain and memory problems. AR 49. He stated that these conditions prevented him from working before his amended onset date of September 30, 2012. AR 42, 44, 46. Plaintiff stated that he was terminated from his job as a sweeper operator in 2013 because he was unable to follow verbal instructions. AR 47-48. He stated that although he applied for work after his alleged onset date, he could not sustain gainful employment due to memory problems. AR 53-54. He testified to numbness and tingling in his feet, and stated that he cannot walk more than one block at a time due to back pain, hip pain, and numbness in his feet. AR 54-55.

In 2008, Plaintiff enrolled in vocational school but was unable to complete training because of problems with memory, communication, and physical endurance. AR 64-65. He has difficulty remembering to perform exercises for physical therapy and keeping up with housework. AR 50, 64-65. He needs help and reminders to take medications, turn off the stove or oven, and pay bills. AR 53, 66.

The ALJ rejected Plaintiff's testimony for several reasons. AR 27-28. First, he found that Plaintiff's allegations of disabling limitations were not supported by the objective medical record. *Id.* Lack of support from the objective medical record is a relevant factor in "determining the severity of the claimant's pain and disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, for example, reports based on mental examinations did not support

Plaintiff's allegations that he was unable to work due to depression and issues with memory and concentration. *See* AR 297, 299, 302, 311, 314-18, 352, 354, 357-58, 360-61 (treatment notes showing Plaintiff presented as alert and fully oriented; exhibited an appropriate mood and affect; was cooperative and showed no overt hostility despite claim of anger management issues; demonstrated logical reasoning processes with no conceptual disorganization, flight of ideas, or disturbance in thought progression; had intact judgment and insight and explained that he benefitted from antidepressant medication). Treating psychiatrist Robert Norvich, M.D. observed reasonable attention span and focus, and examining physician Alison Prescott, Ph.D. noted that Plaintiff could perform several concentration tests. AR 317, 357, 360. The lack of corroborating objective evidence of Plaintiff's allegations of mental limitations, while not a clear and convincing reason, provides some weight to the ALJ's credibility determination. *Rollins*, 261 F.3d at 857.

Second, the ALJ noted that Plaintiff's statements regarding his physical limitations were inconsistent with the medical evidence. AR 28. The ALJ may consider "testimony from physicians … concerning the nature, severity, and effect of the symptoms of which [the claimant] complains" when assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). Here, while Plaintiff testified to debilitating diabetic neuropathy, consultative examining physician Andrea Marshall, D.O. found Plaintiff's complaints of numbness and sensation in his hands to be inconsistent and random. AR 335. Although Plaintiff complained of numbness in his feet that prevented him from walking more than one block, Dr. Marshall reported that Plaintiff denied any numbness in his feet or problems with ambulation. AR 332. By contrast with Plaintiff's allegations of debilitating physical limitations, Dr. Marshall noted Plaintiff could perform tandem heel-to-toe walk, hop, and squat, exhibited full strength in his

lower extremities, and did not require an assistive device. AR 334. The inconsistency between Plaintiff's testimony regarding his debilitating diabetic neuropathy and the objective medical evidence provides a clear and convincing reason for rejecting his credibility. *Thomas*, 278 F.3d at 958-59.

Third, the ALJ found that Plaintiff's symptoms for diabetes improved with treatment. AR 27. Impairments that can be controlled with medication are not disabling. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). An April, 2013 treatment note reveals that Plaintiff was "feeling much better," "more stable," and "clear headed" on his diabetes medication. AR 296. Plaintiff also reported to a treatment provider that his depression medication "worked well." *Id*. Plaintiff's positive response to treatment for his allegedly disabling conditions provides additional weight to the ALJ's credibility finding. *Ware*, 439 F.3d at 1006. Although Plaintiff provides an alternative interpretation of this evidence, the ALJ's reasoning is rational and must therefore be upheld. *Burch*, 400 F.3d at 679.

Fourth, the ALJ found that Plaintiff's daily activities undermined his credibility as to the severity of his limitations. AR 27, 29. Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray*, 554 F.3d at 1226-27, and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins*, 261 F.3d at 857. Although Plaintiff testified that he could not walk more than one block due to pain and physical limitations (AR 54-55), the record shows that Plaintiff was able to operate a 30-pound backpack blower in 2013, build a small shed, regularly walk to the library, manage his personal care, and perform chores around his house. AR 56-57, 258-59, 316. Further, while Plaintiff testified that his concentration and memory limitations prevented him from working, he was able to focus sufficiently to upgrade his computer using spare parts and build a shed. AR 44-45, 51, 316.

Dr. Marshall also noted that Plaintiff was independent in his activities of daily living. AR 333. On this record, it was reasonable for the ALJ to conclude that Plaintiff had exaggerated his physical and mental limitations. *Bray*, 554 F.3d at 1226-27; *Rollins*, 261 F.3d at 857. In sum, the ALJ's credibility determination is supported by substantial evidence in the record.

**B.  Standing and Walking Limitations**

Plaintiff next argues that the ALJ failed to incorporate his standing and walking limitations into the RFC. The ALJ acknowledged Plaintiff's complaints of diabetic neuropathy in his feet, but credited the opinion of consultative examiner Dr. Marshall, who opined that Plaintiff had no walking or standing limitations. AR 28, 334, 336. The record also shows that Plaintiff was able to walk to the library and operate a 30-pound backpack blower in 2013. AR 27, 51, 56-57, 397. Because the ALJ is not required to incorporate limitations into the RFC that are not substantiated by the record, on this record the ALJ did not err in failing to incorporate standing and walking limitations into the RFC.

**C.  Failure to Order a Consultative Examination**

Plaintiff also contends that the ALJ erred because he failed to order a consultative neurocognitive examination. Plaintiff points to several treatment notes documenting mental difficulties. First, Janjan Reforma, M.D. recommended a neurocognitive examination after observing that Plaintiff had to read notes to communicate and exhibited impaired immediate and recent memory. AR 363, 397, 399. Second, a nurse reported concern for Plaintiff's level of confusion and memory difficulty in November 2013. AR 402. Third, Dr. Norvich opined it was probable that Plaintiff showed early to middle signs of Alzheimer's, noting disorientation as to the date and cognitive impairment with markedly impaired memory. AR 363. Plaintiff argues that the record is therefore ambiguous and contains insufficient evidence regarding Plaintiff's cognitive limitations.

The ALJ has "broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). Here, the record contains a psychological examination. AR 314-18. Alison Prescott, Ph.D. administered a psychodiagnostic evaluation on May 20, 2013.[2] *Id.* Dr. Prescott diagnosed major depressive disorder and reading disorder. *Id.* Dr. Norvich also noted Plaintiff retained the mental capacity to sustain a "reasonable" attention span and be "fairly focused" on examination. AR 357, 360. The ALJ reviewed the medical records, including Dr. Prescott's report, and incorporated the credible medical evidence into the RFC by limiting plaintiff to simple, repetitive, routine tasks with only occasional interactions with co-workers and the public. AR 26-28. The record contains sufficient evidence for the ALJ to formulate a correct RFC. The ALJ did not abuse his discretion by declining to order further consultative examinations. *Reed*, 270 F.3d at 842.

**D.  Medical Opinion Evidence**

Plaintiff next argues that the ALJ erred in evaluating the medical evidence in the record. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the

---

[2] In addition to Dr. Prescott's evaluation, further psychological assessments exist in the record and document Plaintiff's mental symptoms and limitations. *See* AR 297, 299, 302, 305, 311, 314-18, 352, 354, 357, 360, 363, 387, and 393. Notes from these examinations reveal Plaintiff to be alert and fully oriented, exhibit appropriate mood and affect, be cooperative, show no overt hostility, demonstrate logical reasoning processes, and have intact judgment and insight. *Id.*

opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

Plaintiff first argues that the ALJ improperly rejected the opinion of treating primary care physician Janjan Reforma, M.D, who opined in a March, 2014 letter that Plaintiff is unable to work due to his physical and mental impairments. AR 347. The ALJ rejected Dr. Reforma's opinion that Plaintiff was disabled, but acknowledged Dr. Reforma's opinion that Plaintiff's memory is "poor" and limited Plaintiff's RFC to simple, repetitive, routine work. AR 29.

The ALJ is not required to accept a medical opinion on the ultimate issue of disability. *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Further, the ALJ need not accept a medical opinion that is "brief, conclusory, or inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. Dr. Reforma's 2014 letter does not articulate symptoms and limitations that compel the conclusion that Plaintiff is unable to sustain gainful employment. AR 347. Dr. Reforma's clinical findings also fail to support this conclusion. For example, in contrast with his 2014 diagnosis of dementia and depression, Dr. Reforma observed in February 2014 that Plaintiff exhibited normal judgment and was in no distress. AR 387. Earlier treatment notes reveal normal judgment, appropriate dress, normal eye contact, and normal speech. AR 393, 399.

The ALJ also noted that Dr. Reforma's March, 2014 opinion was undermined by evidence of Plaintiff's activities. The ALJ may reject a physician's opinion if it conflicts with a claimant's activities. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999). The record shows Plaintiff was able to manage his personal needs, care for his dog, perform household chores, shop for groceries, prepare meals, walk to the library, read the newspaper, and perform various odd jobs during the relevant period. AR 51, 257-60, 316. Although the ALJ's conclusion that these activities were inconsistent with Dr. Reforma's opinion that Plaintiff was completely disabled may be subject to debate, it was rational. AR 29. On this record, the ALJ was not required to accept Dr. Reforma's March, 2014 opinion. *Bayliss*, 427 F.3d at 1216. The ALJ's rejection of Dr. Reforma's disability opinion was supported by substantial evidence and is affirmed. *Morgan*, 169 F.3d at 601-02.

Plaintiff also argues that the ALJ failed to discuss the opinion of treating psychiatrist Dr. Norvich that it was "quite probable" that Plaintiff was showing early signs of Alzheimer's,

and that his memory was "markedly impaired." AR 363. Although the ALJ is "not required to discuss every piece of evidence" in the record, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), he or she must explain why "significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 2003). Here, the ALJ cited to Dr. Norvich's treatment notes in the ALJ's written opinion, but did not mention Dr. Norvich by name or specifically address whey Dr. Norvich's opinion was not being credited. AR 28. Dr. Norvich's opinion was contradicted by Dr. Prescott's more moderate assessments of Plaintiff's mental limitations (AR 314-19), thus the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Norvich's controverted opinion. *Lester*, 81 F.3d at 830. The ALJ did not do so. Because he failed to provide a legally sufficient reason for rejecting Dr. Norvich's assessment of marked impairments in memory, the ALJ committed harmful error. *Howard*, 341 F.3d at 1012; *Vincent*, 739 F.2d at 1394-95. This case is therefore reversed and remanded for the ALJ to consider the assessment of Dr. Norvich.

**E.  Step Two Findings—Alzheimer's and Dementia**

Plaintiff also argues that the ALJ erred by failing to find Plaintiff's Alzheimer's and dementia "severe" at step two of the sequential evaluations, causing further error at step four. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

To the extent that Plaintiff argues that the ALJ committed harmful error by omitting marked mental limitations in the RFC, the success of such an argument depends on the weight given to Dr. Norvich's assessment of marked mental limitations. Because the ALJ did not properly discount Dr. Norvich's assessment of marked mental limitations, and the ALJ did not properly address such limitations in the RFC, the ALJ's treatment of Plaintiff's mental limitations in the RFC is not supported by substantial evidence in the record. On remand, the ALJ should consider all the evidence regarding Plaintiff's mental limitations and, if necessary, address them at Step Two and formulate an alternative RFC.

**F.  New Evidence Submitted to the Appeals Council**

Plaintiff further argues that a remand is appropriate because of new evidence submitted to the Appeals Council, including a 2014 evaluation by Scott Alvord, Psy.D. (Dkt. 16, Ex. A) and a subsequent determination of eligibility for benefits from the Social Security Administration (Dkt. 16, Ex. B). The Commissioner's regulations provide that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R § 404.970(b). The Ninth Circuit has interpreted this to include medical evaluations made after the date of the ALJ's decision where they concern the claimant's condition during the time period before the ALJ's decision. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). Newly submitted records are, however, immaterial to a claimant's application for benefits if they pertain to a period after the date of the ALJ's decision. *Carlson ex rel. Carlson v. Astrue*, No. 09-6344, 2010 WL 5071234 at *3 (D. Or. Dec. 7, 2010) (new evidence was not material because the records pertained to plaintiff's functioning one year after the ALJ's decision).

Here, the Social Security Administration's determination that Plaintiff was eligible for benefits was explicitly based on medical records from August to December, 2014. Dkt. 16, Ex. B at 1. Thus, this determination relates to Plaintiff's condition after the date of the ALJ's opinion. Similarly, the newly submitted records from Dr. Alvord were rendered nearly a year and a half after the ALJ issued his written decision and a review of Dr. Alvord's evaluation shows that he did not offer a functional assessment of Plaintiff's condition on or before the ALJ's decision date. Accordingly, Dr. Alvords' findings do not pertain to the period under review. Therefore, the new evidence submitted to the Appeals Council does not provide ground for reversal. *Carlson*, 2010 WL 5071234 at *3.

## G.  Remand

Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014).

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled").

Here, further development of the record is necessary to support a finding of disability. On remand, the ALJ should be given the opportunity to address the medical evidence relating to Plaintiff's mental limitations, formulate a revised RFC as needed that includes Plaintiff's mental limitations, and, if necessary, take new testimony from a vocational expert regarding Plaintiff's capacity to perform jobs that exist in the national economy. The case is therefore reversed and remanded for further proceedings consistent with this opinion. *Garrison*, 759 F.3d at 1020.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 11th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge